### Litchfield Mining & Power Company v. Margaret J. Beanblossom.

1. MINES AND MINERS ACT—*when owner liable for acts of receiver.* The owner of a mine is liable for the acts of a receiver for such mine and also for the acts of the servants of such receiver operating such mine to the same extent as it is liable for its own acts, had it been conducting such mine under the control of a manager appointed by the directors.

2. VERDICT—*when not responsive to issues.* A verdict is not responsive to the issues in a case where the declaration contained four counts and two of the original plaintiffs were by amendment eliminated therefrom as to but two of such counts.

Action in case. Error to the Circuit Court of Montgomery county;

the Hon. SAMUEL L. DWIGHT, Judge, presiding.   Heard in this court at the May term, 1906.   Reversed and remanded.   Opinion filed December 7, 1907.

JETT & KINDER, for plaintiff in error.

HARRY C. STUTTLE and LANE & COOPER, for defendant in error.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

This is an action in case and was originally brought by Margaret J. Beanblossom, Jesse E. Beanblossom and Leota M. Beanblossom against the Litchfield Mining & Power Company, a corporation, for the recovery of damages resulting to them from the death of Pearl Beanblossom, a minor, and the son of Margaret Beanblossom, and a brother of Jesse E. and Leota M. Beanblossom, who was killed while in the employ of the defendant company, through the alleged wilful failure of said company to observe the provisions of sections 19 and 21 of the statute relating to mines and miners. Rev. Stat. 1905, pp. 1388-90.   A trial by jury resulted in a verdict in favor of the plaintiffs for the sum of $4,000.   Pending a motion for a new trial by the defendant, the plaintiffs were permitted to amend the *praecipe* summons and the first and additional counts of the declaration by striking out the names of Jesse E. and Leota M. Beanblossom as parties plaintiff. The motion for a new trial was overruled and judgment rendered upon the verdict in favor of Margaret J. Beanblossom only.   To reverse said judgment this writ is prosecuted by the defendant.

In each count of the declaration as finally amended it is averred that the defendant on March 26, 1897, was engaged in operating a coal mine and that on that day one Kleinbeck was appointed by the United States Circuit Court for the Southern District of Illinois as receiver of said defendant; that such receivership continued until July 16, 1904, when the bill under which

the receiver was appointed was dismissed, the receiver discharged, and the assets turned over to defendant; that during the time of such receivership the receiver had entire management and control of the business of defendant, collected money due it and applied the receipts to the running expenses and the improvement and betterment of the property; that the property was turned back to defendant without reservation at the end of the receivership; that on June 14, 1904, the deceased, who was a son of Margaret Beanblossom and a brother of Leota M. and Jesse E. Beanblossom, was employed by said receiver as a trapper in the mine operated by him; that his duties were to open and close a certain door when trips of cars were passing to and from the workings. The first count further avers the duty and wilful failure of the defendant to provide a place of shelter at such doorway to protect the deceased from being injured by the cars while attending to his duties; and that while the deceased was attending to his duties as such trapper, a driver started from the east down the track passing through said doorway with three cars of coal; that the front car jumped the track and the deceased was caught between a bar and some props and, there being no shelter or other means of escape, was pressed against the rib and thereby killed. The second count further avers the duty and wilful failure of defendant to provide places of refuge, etc., and that, by reason of such wilful failure, there being then and there no place of refuge and not sufficient space between the car and the rib where he could escape from said car, the deceased was caught between a bar and a prop by a car which jumped the track, while he was in the act of opening the door, and that he died as the result of injuries then received. The third count further avers the duty and wilful failure of the defendant to keep all places of refuge clear of obstructions and to allow no material to be stored or accumulate therein; that the defendant allowed bars, rocks, props and other material to be

stored and accumulate therein; that by means thereof the deceased, while in the act of opening a door for the passage of a car of coal, was thrown against the rib of a car which jumped the track and struck said obstructions and was killed thereby.

The additional count charges that the defendant wilfully failed to provide a place of shelter, in consequence of which a car jumped the track along which it was moving and struck the gob or obstruction in an old entry, or the mouth thereof, so that deceased was caught between a bar and some props and was pressed or mashed against another prop or props. At the close of the plaintiff's evidence, and also at the close of all the evidence, motions were made to instruct the jury to find the defendant not guilty, which were severally denied. A motion was also entered at the close of the plaintiff's evidence to exclude the evidence on the ground of a variance between the evidence and the declaration, in that the declaration charged the duty and failure of the defendant to provide a place of shelter on June 14, 1904, while the evidence showed that defendant was not the operator of the mine at that time, but that it was being operated by a receiver, and that the statute only imposes the duty to provide such place of shelter upon the operator. This motion was denied. Motions were likewise made to instruct the jury to find the defendant not guilty under each of the several counts, all of which were denied. A reversal is asked upon the ground that the court erred in denying said motions and in its rulings upon the evidence and instructions. It is also insisted that the verdict is contrary to the evidence and that no recovery can be had against the defendant under the declaration and the evidence in this case; that the damages are excessive, and that the judgment should have been arrested on account of there being one plaintiff in two counts of the declaration and three plaintiffs in the remaining counts.

Plaintiff in error is charged with a wilful violation

of subdivision (f) of section 19 of the Miners Act, which is in the following language:

"Trappers. (f) At all principal doorways through which cars are hauled an attendant shall be employed for the purpose of opening and closing said doors when trips of cars are passing to and from the workings. Places of shelter shall be provided at such doorways to protect the attendants from being injured by the cars, while attending to their duties."

It is also charged with a wilful violation of subdivision (b) of said act, which provides as follows:

"Mule road. (b) On all hauling roads or gangways on which hauling is done by draft animals, or gangways whereon men have to pass to and from their work, places of refuge must be cut in the side wall at least $2\frac{1}{2}$ feet deep, and not more than twenty yards apart; but such places shall not be required in entries from which rooms are driven at regular intervals not exceeding twenty yards, and wherever there is a clear space of two and one-half feet between the car and the rib, such space shall be deemed sufficient for the safe passage of men. All places of refuge must be kept clear of obstructions and no material shall be stored nor be allowed to accumulate therein."

The evidence shows that one Kleinbeck was appointed receiver of defendant company by the Federal Court March 26, 1897; that he resigned June 21, 1899; that J. D. Crabb was appointed receiver in his stead and continued to act until July 16, 1904, when he was discharged and the assets of the defendant company turned over to it by him without reservation; that the deceased met his death while the mine was being operated by said Crabb as receiver; that during the existence of said receivership there was expended by said receiver in the improvement and betterment of the property $8,028.23, and other large sums in paying the indebtedness of said company.

In support of the contention that a variance existed between the allegations of the declaration and the evidence adduced to support the same, counsel for appel-

lant argues that inasmuch as the mine was under the exclusive control and management of the receiver at the time of the alleged negligent acts or omissions, and appellant was not only not operating the same, but could not have done so without violating the orders of the court, even if it had so desired, it cannot be held to have been guilty of a wilful failure to comply with the duties imposed by the statute. That the evidence shows that the deceased was a servant of the receiver, that the receiver violated the statute, and that even if it be conceded that a recovery can be had in a case of this character, it was necessary, in order to avoid a variance, that the declaration should have averred a violation of the statute by the receiver and not by appellant. In Bartlett v. Cicero Light Co., 177 Ill. 74, it is held that while a receiver holds the property in his possession as an officer of the court, his appointment does not dissolve the corporation, which still remains in existence and is still clothed with its franchises; that the appointment of the receiver merely gives him the temporary management of the corporation under the direction of the court, instead of leaving it under the direction of the manager appointed by the directors of the corporation; that the corporation's capacity of being sued is not affected; that the receiver is legally the agent of the company, although under the directions of the court; and that the title to the property is not diverted by his appointment.

It is there further held that damages for injuries to persons and property during the receivership caused by the torts of the receiver's agents and employes are classed as a part of the operating expenses of the corporation and thereby paid out of the net income, if that is sufficient, but in the event of a deficiency they will be paid out of the corpus; and that where the net income derived from the business during the receivership is derived from the payment of such operating expenses and applied to the permanent improve-

ment of the property of the corporation and the receiver is afterwards discharged and the property, together with such improvements, is again turned over to the corporation, in such case the corporation is liable for torts during the receivership to the extent of the net income so applied. This being the law, the appellant corporation was liable for the acts of the receiver to the same degree and extent as it would have been had the mine been under the control of a manager appointed by the directors. To hold otherwise would be to render nugatory the provisions of the statute, in all cases where the servant is injured while in the employ of a receiver and seeks to recover damages therefor after the discharge of such receiver, and to this extent defeat the beneficent purposes of the statute. It is well settled that a receiver is not personally liable for claims of the present origin and character. If the corporation could not be held responsible, it would follow that the injured servant would be relegated to his remedy at common law, and thus deprived of the benefits of a statute enacted for the especial benefit of miners to promote their safety and well-being. The acts of the receiver were therefore properly and sufficiently averred as those of the corporation, and no variance existed between the allegations and the proofs, as contended.

The evidence shows that Pearl Beanblossom was killed in the mine of plaintiff in error on June 14, 1904. He left surviving him defendant in error, his mother, and Leota M. Beanblossom and Jesse Beanblossom, his sister and brother. He lived with his mother and assisted in her support. At the time of his death he was seventeen years of age, in good health and earning $1.14 per day. Prior thereto he had for several months been employed by plaintiff in error as a trapper in its mine, and was stationed at a principal doorway in the east entry of the mine, about 500 feet from the bottom of the shaft. In the doorway was a door some six feet square, which was hung at the

side of the entry on a prop. The entry at this point was twelve feet in width and in it was laid a track two feet and six inches wide. The cars used upon such track were four feet wide. In the performance of his duties as trapper, the deceased usually stood on the south side of and close to the end of the door. When cars approached, he took hold of it on the south side, opened it to the north and then stood a short distance back of the door on the north side, in order to allow the cars to pass. There is evidence tending to show that at the latter point was the mouth of an old entry which had been filled up with dirt, held in place by props six to eight inches in diameter, several of which stood upright and others were placed horizontally back of them. To one of the upright props the door, when opened, was secured by means of an iron hook. Some two feet east of such prop was another and between these props the deceased stood when holding the door open. On the day in question a driver having a train of three cars hauled by a mule and containing about 9,000 pounds of coal arrived at the top of the incline. The deceased went about sixty feet up the track from the door, gave the driver the signal to proceed and then returned to his station. The train then came down the grade at a high rate of speed and struck against one of the props in the mouth of the old entry with such force as to drive the prop against the body of the deceased and crush him so that he died shortly thereafter.

The evidence upon the issue as to whether or not there existed at the doorway a sufficient place of refuge under the statute is in sharp conflict. The evidence adduced by defendant tends to show that there was a space of three by four feet between the rail of the track and the rib of the coal; that the state and county inspectors had visited and inspected the mine several times and had made no complaint of the absence of proper places of refuge; while that adduced by plaintiff tends to show that the space between the rail and the

rib was about two and one-half feet in width only; that the props and other objects which were allowed to remain in the mouth of the former entry reduced the space between the rail and the props to from twelve to eighteen inches.

Inasmuch as there is evidence in the record tending to show that the plaintiff in error, through its agent, the receiver, had consciously failed to observe the provisions of the statute in question, as charged in the declaration, the court did not err in refusing to direct a verdict for the defendant.

The jury returned a verdict upon all four counts of the declaration. Two of the original plaintiffs were, by amendment after verdict, eliminated from the cause as to but two of such counts. The verdict and judgment were therefore not responsive to the issues joined.

In such state of the pleadings, the motion in arrest of judgment should have been sustained and the judgment must be reversed and the cause remanded. We shall therefore refrain from further discussion of the evidence.

*Reversed and remanded.*